UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **PERFECT BODY IMAGE, LLC,** | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:24-cv-705-ACA |
| **PERFECT BODY LASER AND WELLNESS, LLC, et al.,** | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Perfect Body Image LLC, d/b/a Perfect Body Laser and Aesthetics ("Perfect Body") holds a word mark and a trademark in connection with its laser skin service center in New York. After learning that Defendant Perfect Body Laser and Wellness, LLC ("PBLW") was providing laser skin services in Alabama, Perfect Body sued PBLW, Chief Executive Officer Chandra C. Bowen, and Medical Director Dr. Calvin Spellmon, Jr., for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1). (Doc. 1 at 1–2, 8–9).

Defendants move for partial summary judgment on the remedies Perfect Body seeks in its complaint. (Docs. 43, 44). The court **WILL GRANT IN PART** and **WILL DENY IN PART** Defendants' joint motion for partial summary judgment. (Doc. 44). The court **WILL GRANT** Defendants' joint motion as to damages and an accounting of profits because Perfect Body failed to provide a

computation of either of these remedies. The court **WILL DENY** Defendants' joint motion as to injunctive relief because they have not proved that injunctive relief is barred. The court also **WILL GRANT** Dr. Spellmon's individual motion because Perfect Body has not presented any evidence he can be held liable for any of PBLW's alleged trademark infringement. (Doc. 43).

## I. BACKGROUND

When ruling on a motion for summary judgment, the court "must construe the facts and draw all inferences in the light most favorable to the nonmoving party and when conflicts arise between the facts evidenced by the parties, [it] must credit the nonmoving party's version." *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024) (quotation marks omitted; alteration accepted).

Perfect Body is a laser aesthetics business in Bay Shore, New York which has been in operation for eighteen years and has served over 400,000 clients. (Doc. 45-3 at 3; doc. 5-11 ¶ 3). Perfect Body advertises its services nationally and holds itself out as a destination for specialized laser services. (Doc. 50-11 ¶ 3). Perfect Body has no physical business locations in Alabama, has never specifically targeted advertising to customers in Birmingham, and has no plan to expand into Alabama. (Doc. 45-2).

Perfect Body owns the word mark "Perfect Body Laser and Aesthetics," which it has used since 2008 and registered in 2014. (Doc. 50-11 ¶ 4–5; *see* doc.

50-1). It owns a trademark graphic logo, which was also registered in 2014. (Doc. 50-11 ¶ 21; *see* doc. 50-7).

PBLW performs laser skin services and operates solely from its single business location in Homewood, Alabama. (Doc. 45-4 ¶¶ 5–8). Ms. Bowen is the sole member and sole officer of PBLW. (*Id.* ¶ 3). The company started using the word mark "Perfect Body Laser & Wellness" and a corresponding graphic logo in February 2021, when it was founded. (*Id.* ¶ 4; doc. 50-2). Ms. Bowen had no knowledge of Perfect Body's business when she chose PBLW's name. (Doc. 45-4 ¶¶ 10–11).

PBLW uses Vagaro, an appointment-booking platform (doc. 50-3), and the e-commerce marketplace Groupon (doc. 50-5 at 3). A Better Business Bureau complaint indicates that in August 2024, one customer mistook PBLW's Groupon advertisement as belonging to Perfect Body. (Doc. 50-5 at 2). Online searches for "perfect body laser" return results for both PBLW and Perfect Body. (Doc. 50-11 ¶ 18).

Dr. Spellmon was the Medical Director of PBLW when Perfect Body served its complaint. (Doc 43-1 ¶ 2). Dr. Spellmon was responsible for procedures at PBLW that required oversight from a licensed physician, but not advertising, branding, or marketing. (*Id.*).

## II. DISCUSSION

"Summary judgment is appropriate if the evidence before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Stalley*, 124 F.4th at 1282–83 (quotation marks omitted). To defeat a motion for summary judgment, "the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Calderon v. Sixt Rent a Car, LLC*, 114 F.4th 1190, 1199 (11th Cir. 2024) (quotation marks omitted).

The Lanham Act creates a cause of action for trademark infringement. *See* 15 U.S.C. § 1114(1). A trademark registrant can hold a defendant liable for using a colorable imitation of a registered mark that is "likely to cause confusion, or to cause mistake, or to deceive." *Id*. To make a *prima facie* showing of trademark infringement, the plaintiff must show, among other things, a likelihood of confusion between the two marks. *Tana v. Dantanna's*, 611 F.3d 767, 773 n.5 (11th Cir. 2010). The Eleventh Circuit considers these factors to determine if marks are likely to confuse:

> (1) the strength of the allegedly infringed mark; (2) the similarity of the infringed and infringing marks; (3) the similarity of the goods and services the marks represent; (4) the similarity of the parties' trade channels and customers; (5) the similarity of advertising media used by the parties; (6) the intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

*FCOA LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 947 (11th Cir. 2023). The Court has also considered consumer sophistication, *id.*, and geographic proximity of the users, *Tana*, 611 F.3d at 775, 780.

Where liability under the Lanham Act has been established, a plaintiff's remedies can include injunctive relief against future infringing use and damages if the infringer acted in bad faith or made a knowing and material misrepresentation. *Id.* § 1114(2). In the present case, Dr. Spellmon moves for summary judgment on both liability and remedial grounds. (Doc. 44). The remaining Defendants move for partial summary judgment on the grounds that Perfect Body is not entitled to any remedy it seeks. (Doc. 43). The court will begin with the issue of remedies.

    1.    <u>Remedies</u>

In its complaint, Perfect Body seeks an injunction, damages, and an accounting of PBLW's profits. (Doc. 1 at 10). The court will address each in turn.

    a.    *Injunctive Relief*

Defendants argue that injunctive relief is barred because PBLW operates in a geographically distinct market from Perfect Body and there is no likelihood that Perfect Body will expand into PBLW's market. (Doc. 47 at 10–11 (citing *Am. Foods, Inc. v. Golden Flake, Inc.*, 312 F.2d 619, 626 (5th Cir. 1963) (adopting *Dawn Donut*

*Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 364 (2d Cir. 1959)).[1] In response, Perfect Body does not object to Defendants' argument that *Dawn Donut* bars injunctive relief but contends that the *Dawn Donut* rule cannot survive in the age of the internet because geographically distinct markets do not eliminate the likelihood of confusion. (Doc. 47 at 11–14; doc. 51 at 18–19).

The parties read *Dawn Donut* too broadly. *Dawn Donut* does not create a separate additional burden for plaintiffs seeking injunctive relief. In *Dawn Donut*, the owner of registered trademarks limited its request for relief to an injunction. 267 F.2d. at 360. The Second Circuit denied the request "because no likelihood of public confusion arises from the concurrent use of the mark . . . in separate trading areas, and because there is no present likelihood that [the registrant] will expand its retail use of the mark into defendant's market area," and therefore "plaintiff [was] not . . . entitled to *any* relief under . . . § 1114." *Id.* (emphasis added). In other words, the court denied the plaintiff's demand for injunctive relief because the plaintiff did not establish liability, not because the statutorily created remedy was barred.

*American Foods* is similar. There, the district court enjoined the defendant's use of a trademark in five states that were the "trade territory of plaintiff" but denied injunctive relief as to the remaining portions of the country where the plaintiff did

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

not operate. 312 F.2d at 622. On appeal, the former Fifth Circuit affirmed the district court because the plaintiff had not expanded its business or advertising outside of the injunction area in thirty-eight years of business, and did not plan to do so. *Id.* Citing *Dawn Donut*, the Court explained that in such factual circumstances, the registrant was not entitled to an injunction outside of their territory because "a registrant may enjoin only that concurrent use which *creates a likelihood of public confusion*" and there is no possible confusion in a market that the registrant does not participate. *Id.* at 625 (emphasis added).

These cases are straightforward applications of the Lanham Act, which requires courts to (1) determine if there is a likelihood of confusion, and (2) enjoin use wherever that likelihood exists. *See* 15 U.S.C. §§ 1114(1), 1116(a). In both cases, the Courts determined that there was no likelihood of confusion based on some of the factors listed above and denied injunctive relief. As these cases show, courts necessarily must first determine liability before creating an injunction to remedy the infringement. Defendants here limited the issue they presented to the court to the remedies available. But the court will not advise whether injunctive relief would be appropriate without first determining if there is a likelihood of confusion.

The two Eleventh Circuit cases Defendants cite for support of their broad interpretation do not hold otherwise. These cases reiterate the unremarkable principle that a plaintiff is entitled to an injunction only where there is an

7

infringement, and infringement occurs only where the plaintiff can show there is a likelihood of confusion. *Citibank, N.A. v. Citibanc Grp., Inc.*, 724 F.2d 1540, 1546 (11th Cir. 1984); *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1024–25 (11th Cir. 1989). The cases do not, as Defendants would have the court believe, stand for the idea that geographic proximity alone can determine where a plaintiff's enforceable rights extend.

In light of the foregoing, Defendants have not established that "longstanding precedent in this Circuit precludes the injunctive relief Plaintiff seeks." (Doc. 47 at 10). Accordingly, the court **WILL DENY** the Defendants' partial motion for summary judgment as to injunctive relief.

### b.  *Damages and Defendants' Profits*

Perfect Body seeks damages and an accounting of Defendants' profits stemming from their use of Perfect Body's registered trademarks. (Doc. 1 at 10). Defendants maintain that Perfect Body is not entitled to damages or PBLW's profits because under Federal Rules of Civil Procedure 26 and 37, Perfect Body has not presented evidence of recoverable damages or profits owed by PBLW. (Doc. 47 at 16, 20).

If a plaintiff proves trademark infringement under the Lanham Act, it may recover "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). A plaintiff's initial disclosures must

provide "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii). A party must timely supplement its initial disclosures if they are incomplete or incorrect. Fed. R. Civ. P. 26(e)(1)(A). If the plaintiff fails to provide this information, "the party is not allowed to use [it] . . . to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Perfect Body's initial disclosure stated that, because there had been no discovery, it was unable to compute damages. (Doc. 45-1 at 3). Discovery ended on January 21, 2025. (Doc. 34 at 2). Perfect Body concedes that it has not disclosed its damages. (Doc. 51 at 36–38). Perfect Body also did not identify a profits calculation as a category of damages sought, despite Defendants providing it with tax returns that could allow Perfect Body to calculate profits. (*See id*.; doc. 45-4 at 4); *cf. Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1488 (11th Cir. 1987) (concluding that income tax returns were sufficient proof to require an accounting of the defendant's profits).

Perfect Body fails to persuasively explain why its failure to disclose computations was "substantially justified." Fed. R. Civ. P. 37(c)(1). Perfect Body maintains it did not amend its supplemental disclosures before Defendants served their summary judgment motions because it believed that settlement negotiations were ongoing. (Doc. 51 at 36–37). But this court's scheduling order clearly stated

9

that the parties were required to supplement their Rule 26 disclosures fourteen days before the close of discovery and that discovery closed on January 21, 2025. (Doc. 34 at 2–3). The scheduling order also prescribed protocols for a party to seek an extension of these deadlines. (*Id.* at 3). Neither party moved for an extension of discovery or a stay of the scheduling order based on the referral to mediation. (*See* doc. 37 at 3). And, the parties did not begin mediation conferences until January 23. (Doc. 39). The court does not see how the parties' mediation *after* the close of discovery could excuse Perfect Body's failure to fulfill its discovery obligations.

To the extent that Perfect Body argues that it believed the magistrate judge took on the responsibility of amending the scheduling order, that is unreasonable. The docket reflects no amendment, and Perfect Body never moved to reopen discovery, as would be required to amend their disclosures.

The court is also not convinced that Perfect Body's failure to disclose its damages calculation was harmless. *See Circuitronix, LLC v. Kinwong Elec. (Hong Kong) Co.*, 993 F.3d 1299, 1307–08 (11th Cir. 2021) (determining that a failure to disclose damages calculations was not harmless when damages could have been calculated multiple ways through potentially complicated methods). Perfect Body never specified how it will calculate lost profits or damages, and the formula is not obvious given that the companies are in different markets and overlapping sales are largely speculative. (*See* doc. 51 at 36–37). At this point, Perfect Body could only

10

rectify this shortcoming by moving to reopen discovery, further prejudicing Defendants.

Because Perfect Body did not disclose its damages and profits computations, and the failure was not substantially justified or harmless, it is precluded from using this evidence to support its argument at the motion for summary judgment stage. Perfect Body provided no other evidence of actual harm or Defendants' unjust enrichment. (*See generally* doc. 51; doc. 45-3 at 4–5). Accordingly, Perfect Body has not created a genuine issue of fact that would allow a reasonable jury to find that it is entitled to damages or Defendants' profits. Defendants are entitled to summary judgment with regards to damages and profits.

Perfect Body asks this court to grant it leave to serve its damages calculation now. (Doc. 51 at 37). But a request for a court order must be made by separate written motion, not embedded in an opposition brief. FRCP 7(b)(1) ("A request for a court order must be made by motion."). Accordingly, the issue has not been properly raised and the court will not grant relief here.

### 2. Dr. Spellmon

Dr. Spellmon separately moves for summary judgment as to his liability, arguing that he cannot be held personally liable for PBLW's alleged infringement. (Doc. 46 at 1). A corporate officer can be held liable for a company's infringement under the Lanham Act if he "actively participated as a moving force in the design to

11

engage in the infringing acts, or otherwise caused the infringement as a whole to occur." *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1161 (11th Cir. 2022) (quotation marks omitted).

Perfect Body provided no evidence that Dr. Spellmon was involved in the trademark infringement. The undisputed evidence shows that Dr. Spellmon is a physician who was tasked with oversight of medical procedures and was not involved in PBLW's advertising, branding, or marketing. (Doc. 43-1 ¶ 2). Dr. Spellmon has never been an owner, officer, member, or principle of PBLW. (*Id.* ¶ 4). He also did not participate in the selection, creation, design, or approval of PBLW's trademarks, marketing materials, or advertising. (*Id.* ¶ 8). In the absence of any evidence to the contrary, Perfect Body has failed to create a dispute of material fact that Dr. Spellmon caused or was a moving force in the design for the infringement to occur. *See Edmondson*, 43 F.4th at 1161.

Perfect Body argues that Dr. Spellmon is liable for contributory trademark infringement as the service provider to PBLW. (Doc. 52 at 19–23). A claim for contributory trademark infringement requires that a defendant either "intentionally induce[]" an entity to commit infringement or supply a "product" to an entity that it knows or has reason to know is committing trademark infringement. *Luxottica Grp. S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1312 (11th Cir. 2019). Supplying "services and support" that enable a third party's continued infringement can also

12

give rise to contributory liability. *Id.* at 1313, 1315 (holding a landlord that provided "space, utilities, maintenance, and parking" can be held liable for its tenant's infringing acts).

Perfect Body has not created a triable issue that Dr. Spellmon's actions amount to contributory infringement. There is no evidence that Dr. Spellmon induced PBLW to adopt the allegedly infringing trademarks. He also did not "supply [a] product" or service as is contemplated by the contributory trademark infringement framework. *Id.* at 1312. Dr. Spellmon is an employee who provided a service: physician-assisted laser treatments. (Doc. 43-1 ¶ 2). He did not supply a tangible product that infringed a trademark. *See, e.g., Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 854 (1982) (mislabeled generic drugs). And the "services" Dr. Spellmon provides are not the kind of support that courts have found give rise to liability. Courts ascribe contributory infringement where a service provider furnishes an instrumentality which the third party uses to continue its infringement, such as by providing a location or platform for a company to sell infringing products. *See Luxottica Grp.*, 932 F.3d at 1313–14; *see also Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 105 (2d Cir. 2010) (applying the contributory infringement framework to an online marketplace). Holding Dr. Spellmon liable for PBLW's actions would expand the contributory liability framework beyond its purpose by holding an employee liable

for continuing to perform the service he is employed to do. The court refuses to do so, and as such, Dr. Spellmon is entitled to summary judgment.

### III. CONCLUSION

For the reasons stated above, the court **WILL DENY** Defendants' joint motion for partial summary judgment as to injunctive relief. The court **WILL GRANT** Defendants' joint motion for summary judgment as to damages and an accounting of profits and **WILL ENTER JUDGMENT** in their favor and against Perfect Body. The court also **WILL GRANT** Dr. Spellmon's individual motion for summary judgment and **WILL ENTER JUDGMENT** in his favor and against Perfect Body.

The court will enter a final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this March 2, 2026.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE